DAVID JAFFE
Chief, Violent Crime and Racketeering Section

GRACE BOWEN (Virginia Bar No. 96894)
Trial Attorney
United States Department of Justice
Violent Crime and Racketeering Section
1301 New York Avenue, NW, Suite 700
Washington, D.C. 20005
E-mail:   grace.bowen2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　　　v.<br><br>JULIAN GIRALDO-OSPINA,<br><br>　　　　　Defendant. | Case No.<br><br>UNITED STATES'S BRIEF IN SUPPORT OF DETENTION<br><br>DATE: December 3, 2025<br>TIME: 2:00 p.m.<br>COURT:  Hon. Chi Soo Kim |

**BRIEF IN SUPPORT OF DETENTION**

On October 1, 2025, a grand jury sitting in the Southern District of Florida returned an indictment charging the defendant, Julian Giraldo-Ospina and five co-defendants, with one count of racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d)[1]; one count of conspiracy to commit money

---

[1] The racketeering conspiracy count is based on racketeering acts consisting of violations of 18 U.S.C. § 1028 (relating to fraud and related activity in connection with identification documents); 18 U.S.C. § 1343 (relating to wire fraud); 18 U.S.C. § 1351 (relating to fraud in foreign labor contracting); 18 U.S.C. § 1546 (relating to fraud and misuse of visas, permits, and other documents); and 18 U.S.C. § 1956 (money laundering).

1    laundering, in violation of Title 18, United State Code, Section

2    1956(h), and one count of conspiracy against the United States, in

3    violation of Title 18, United States Code, Section 371 (based on

4    misuse of U.S. government seals in violation of Title 18, United

5    States Code, Sections 506 and 1017; and impersonation of U.S.

6    officials in violation of Title 18, United States Code, Section

7    912).[2]

8        On December 3, 2025, the defendant was arrested at his residence

9    in Sacramento, California and will appear for an initial appearance.

10   One of his co-defendants was arrested in the Eastern District of

11   Texas, and the other four co-defendants are located in Medellin,

12   Colombia, three of whom were also arrested on December 3, 2025.  The

13   United States files this brief in support of detention to supplement

14   the information contained in the pretrial services report.

15   **A. <u>Standard of Review</u>**

16       If the Court determines that conditions will not assure "the

17   safety of any other person and the community" or that conditions

18   cannot be fashioned to "reasonably assure the appearance of the

19   [defendant]," then the Court must detain the defendant. 18 U.S.C.

20   § 3142(e), (f).  Danger to the community must be shown by clear and

21   convincing evidence. 18 U.S.C. § 3142(f).  The risk of non-appearance

22   must be shown by a preponderance of the evidence.  *United States v.*

23   *Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

24       The Court must consider a number of factors when determining

25   whether there are conditions that will reasonably assure the

26   appearance of the person and safety of the community.  18 U.S.C.

27   ────────────────

28       [2] Only the defendant and four of the other co-conspirators were
     charged in Count Three.

§ 3142(g).  Those conditions are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person—to include family ties, financial resources, employment, and community ties; (4) the nature and seriousness of the danger to any person or the community.  *Id.*

**B. <u>There is no condition that the Court can impose that would reasonably assure the safety of the community or the appearance of the defendant at future court proceedings.</u>**

a. <u>Background on the Visa-Fraud Enterprise</u>

This Indictment stems from a four-year, sophisticated, racketeering and money laundering scheme in which the defendant and other co-conspirators deceived over 7,000 victims in the Latin American and Caribbean ("LAC") region who were seeking temporary worker ("H-2") visas for employment in the United States.  Victims were deceived into believing that they were participating in a legitimate visa-application process through Facebook pages and other websites fraudulently advertising assistance in obtaining supposedly legal work visas for the United States.

Instead, victims were guided through an elaborate, fake process during which co-conspirators called "asesores" (or consultants) pretended to help with the application process and made false representations during the calls and electronic communications about jobs that were available.  These asesores worked out of call centers in Colombia.  As part of the fraud, co-conspirators would impersonate U.S government officials in video calls and show victims counterfeit U.S. documents, such as fake visa approvals and employment authorizations that often included counterfeit replicas of U.S.

1    department and agency seals.

2    Members of the Visa-Fraud Enterprise communicated with the

3    victims via WhatsApp and directed the victims to wire money to

4    intermediaries in the United States, including the defendant. The

5    victims thought they were paying fees for identification documents

6    and visas, or setting up bank accounts in the United States.

7    Ultimately, deceived into believing that they had actual

8    appointments at the United States Embassy in their respective

9    countries to obtain a valid U.S. visa, unwitting victims would report

10   to the embassies. Once there, they were informed that no appointment

11   existed. In fact, no legitimate visas or services of any kind were

12   rendered to the victims. Victims continue to arrive at United States

13   embassies in various countries for these non-existent visa

14   appointments at the direction of the Visa-Fraud Enterprise,

15   indicating this is an ongoing scheme.

16   Law enforcement has interviewed approximately 700 victims to date

17   and, as noted above, there is evidence that over 7,000 additional

18   victims were drawn into the fraud scheme. Reported victim losses range

19   from approximately $50 to $90,000 per person. Between approximately

20   2021 and the present, enterprise members have been responsible for

21   approximately $2.5 million sent from victims in up to 15 countries in

22   relation to this scheme. For context, the minimum wage in El Salvador

23   is between $305.23 and $408.80 per month depending on the industry that

24   the individual works in.

25

26   The money bilked from victims was laundered. As money made its

27   way from the intermediaries in the U.S. to enterprise leaders, it

28

typically changed hands at least twice, often more frequently. Within the United States, a network of group leaders, including the defendant, organized intermediaries (referred to internally as "proveedores") to whom victims made their payment.  Leaders of the enterprise in Colombia directed asesores about which proveedores to use.  The idea was to rotate proveedor use to avoid suspicion of any given person receiving too many wire transfers. Group leaders received a percentage cut of any transaction handled by their network of proveedores.

　　　b. <u>The Defendant's Role in the Visa-Fraud Enterprise</u>

Defendant was a high-level Visa-Fraud Enterprise member.  He played two roles.  First, the defendant partnered with his brother co-defendant Andres Giraldo-Ospina, in managing call centers in Colombia.  Second, he was primarily responsible for coordinating U.S.-based intermediaries in California, handling cash collection, and transferring proceeds to counterparts in Colombia.

Co-defendant Andres Giraldo-Ospina, started out providing technical support to the call centers in Medellin, Colombia, and ultimately with the help of the defendant, managed centers of his own.  Andres Giraldo-Ospina was arrested on December 3, 2025, in Medellin, Colombia.  During pre-indictment searches of the defendant's iCloud account, and Andres Giraldo-Ospina's iCloud account, investigators found a multitude of WhatsApp conversations, images, and videos documenting the brothers' joint collaboration in the scheme, including sharing expenses for fraudulent Facebook advertisements and office-related costs, documenting transactions, and video footage of a new call center along with the lease

1  agreement.  The defendant and his brother also messaged back and

2  forth about counterfeit U.S. agency seals that were used as part of

3  the scheme. The Visa-Fraud Enterprise regularly affixed counterfeit

4  U.S. agency seals to fraudulent visa application documents.

5     The defendant was also a major participant in the Visa-Fraud

6  Enterprise operations in the United States.  From in or about

7  December 2021 to in or about December 2024, the defendant coordinated

8  almost three dozen proveedores in the United States.  These

9  proveedores would receive money from the victims at the direction of

10  the defendant.  The money would then be funneled to leadership in

11  Colombia, including accounts associated with the defendant and his

12  brother.

13     Investigators subpoenaed the defendant's financial transaction

14  records from MoneyGram, Western Union, and Ria Financial and noted

15  that between January 2022 and February 2024, the defendant himself

16  received in the United States approximately $31,470 from suspected

17  Transnational Criminal Organization (TCO) Victims[3] from four

18  countries throughout the LAC region.  Further, between March 2021 and

19  January 2025, a Zelle account registered to the defendant received

20  approximately $112,958.34 from approximately 16 Visa-Fraud Enterprise

21  members and associates in the United States. Further still, within

22  that time period, the defendant sent approximately $95,193 to

23  numerous individuals in Medellin, Colombia, including to his own

24

25     [3]A TCO Victim is defined as an individual who has either been
   interviewed by investigators or had their personally identifiable
26  information discovered on a fraudulent website.  A suspected TCO
   Victim is an individual who resides in a Central or South American
27  country other than Colombia who has not yet been interviewed by DSS
   or USAID/OIG investigators but has wire-transferred funds to a member
28  or associate of the Visa-Fraud Enterprise.

Colombian bank accounts.

The defendant was closely involved in managing his proveedores in the United States. For example, on March 23, 2023, the defendant messaged a new proveedor with the name of a victim, the amount $980, an eight-digit "codigo" or code number, the word "Money," and information that it was sent from El Salvador. He then offered to show the proveedor how easy it was to send the money. On that same day, that proveedor received $980 sent from a victim in El Salvador via MoneyGram. After receiving the money, the proveedor sent $823 from California to one of the Visa-Fraud Enterprise leaders in Colombia via MoneyGram. This was the typical pattern of how money exchanged hands between U.S. intermediaries and the Visa-Fraud Enterprise leaders in Colombia.

Beyond transactions that the defendant conducted himself, the proveedores controlled by the defendant received at least $319,967 from victims in LAC regions. Investigators suspect that at least three individuals close to the defendant, including two living at his home in Sacramento were either a part of the Visa-Fraud Enterprise or at least benefitted from the scheme. The investigation into the Visa-Fraud Enterprise is still ongoing.

> c. <u>Nature and Circumstances of the Offense and Weight of the Evidence Against the Defendant</u>

The nature and circumstances of these offenses are serious. The defendant is charged with a RICO conspiracy and, therefore, could be liable for the full amount of loss attributable to the Visa-Fraud Enterprise. The Visa-Fraud Enterprise has, to date, defrauded thousands of victims out of over $2.5 million dollars. That is just

the reported amount of loss.  There are many more victims and losses yet to be tabulated.  As a result, even with Criminal History Category I (see below), the defendant could be facing up to 12.5 years in prison.[4]

The evidence against the defendant is strong.  Investigators in this case obtained data from the defendant's iCloud account as well as the iCloud accounts of three of the defendant's co-defendants. Investigators have also obtained data from various co-conspirators' Google cloud accounts as well as phone extractions from the defendant's own phone as he was crossing the border into the United States in September 2024 and from one other co-defendant in February 2025.  From this data, the government has compiled photos, videos, and WhatsApp chats involving the defendant that show the extent of his involvement and knowledge of the scheme.

Among this evidence was a photo saved in the defendant's iPhone of a flow chart of the steps in the fraudulent work visa process and the fees charged at each stage.  There were also records of individual transactions and the breakdown of the division of funds, including as to one transaction, a video that the defendant sent to Andres Giraldo-Ospina of piles of cash associated with five transactions, including a receipt showing the sent amount of $550.

Investigators also obtained records from money transmission

---

[4] This starts with a base level of 8, per U.S.S.G. § 2S1.1(a)(2), an increase of 16 for loss amount pursuant to § 2S1.1(a)(2) and the table in § 2B1.1, another 4 levels upward under § 2S1.1(b)(2)(C) because he is in the business of laundering funds, and another 4 levels upward because of his leadership role in an organization involving at least 5 other participants and that was otherwise extensive, § B1.1(a).  With acceptance of responsibility the defendant would be facing up to approximately ten years of imprisonment.

businesses such as MoneyGram, Remitly, Western Union, and Zelle, which showed a large quantity of transfers between the defendant, suspected TCO Victims, U.S. intermediaries, and Colombian Visa-Fraud Enterprise members and associates. Further, the evidence in this case shows that the money primarily flowed back to Colombia. The government is still gathering evidence of the full scope of this scheme, but it is wide reaching, with members and associates living in at least four countries: Colombia, Ecuador, El Salvador, and the United States. The defendant could have connections to other Visa-Fraud Enterprise members and associates in any of these locations and may be enticed to flee there to avoid facing these charges.

If the defendant flees, the government will have to search for him, whether it be in Colombia, where he has citizenship, one of the other countries where Visa-Fraud Enterprise members and associates live, or Mexico, where, as discussed below, he has regularly traveled in the past few years.

d. <u>History and Characteristics of the Defendant</u>

The history and characteristics of the defendant weigh in favor of detention. The defendant is a citizen of Colombia and a legal permanent resident of the United States. He resides in Sacramento, California and has owned his home in Sacramento since April 30, 2021. However, as of July 2024, the defendant also owned two properties and multiple vehicles in Medellin, Colombia, where the Visa-Fraud Enterprise is based. He also has bank accounts in Colombia, which were often used to receive or transfer funds between TCO Victims, U.S. intermediaries, and Visa-Fraud Enterprise members and associates in Colombia.

1        Further, while the defendant is a legal permanent resident of

2   the United States, conviction on the indicted charges could make him

3   deportable.  *See* 8 U.S.C. § 1227(a)(2)(A)(i) (crimes of moral

4   turpitude) and (iii) (aggravated felony).  The definition of

5   "aggravated felony" in 8 U.S.C. § 1101(a)(43), includes money

6   laundering under 18 U.S.C. § 1956 involving over $10,000 in funds, §

7   1101(a)(43)(D), and racketeering, § 1101(a)(43)(J).

8        In January 2017, defendant was charged with driving under the

9   influence of alcohol or drugs.  On May 1, 2017, he was sentenced to

10  three years of probation; 4 days jail or fine; and 20 days jail.

11       The defendant does not have particularly strong family ties in

12  Sacramento.  The defendant has two cousins that live with him,. As

13  stated above, investigators suspect that individuals living in the

14  defendant's home in Sacramento are involved in, or have benefitted

15  from, the Visa-Fraud Enterprise. He also has a daughter who is

16  approximately 10-11 years old and a wife who lives with him.

17       Further, over the past few years, the defendant has taken

18  multiple trips back to Medellin, Colombia and sometimes stays for

19  long periods of times.  For example, on May 31, 2023, the defendant

20  flew to Medellin, Colombia and stayed until July 5, 2023.  He also

21  went to Medellin, Colombia on August 14, 2024, and returned on

22  September 5, 2024.  Additionally, in the past 12 years, the defendant

23  has taken multiple other international trips to include Cancun,

24  Mexico; Mexico City, Mexico; Panama City, Panama; and Bogota,

25  Colombia.  The defendant could flee to any one of these locations in

26  order to avoid facing these charges.  He clearly has the means to

27  travel and, with two properties, vehicles, and bank accounts in

28

1   Colombia, he could easily re-start his life in Colombia to avoid

2   prosecution in the United States.

3       The defendant is self-employed in Sacramento working with cars, a

4   job he could certainly do elsewhere.  Overall, the defendant has

5   little tying him to Sacramento and poses a great risk of flight.

6           e. <u>Nature and Seriousness of the Danger to Any Person in the</u>

7               <u>Community</u>

8       The Visa-Fraud Enterprise is still functioning today.  Victims

9   continue to arrive at embassies in the LAC region thinking they have

10  visa application appointments.  The fraud can be easily executed with

11  nothing more than a cell phone and a computer.  If the defendant is

12  released and has access to a phone, computer, or other electronic

13  device, he can facilitate the fraudulent scheme.  The danger to the

14  community continues as long as members of the Visa-Fraud Enterprise

15  are allowed to access devices and deceive victims into believing that

16  they are paying legitimate fees for legitimate visa approvals.  While

17  some call centers in Colombia were raided on December 3, 2025,

18  investigators have reason to believe there are additional call

19  centers that are still active in Colombia.

20      Further, many of the Visa-Fraud Enterprise members and

21  associates were fraudulently claiming to be government officials,

22  displaying counterfeit United States agency shields, and generally

23  undermining the legitimate visa application process.  If the

24  defendant is not detained, he can continue to play his role in

25  facilitating this scheme and illegitimizing the visa application

26  process.

27           f. <u>Risk of Flight</u>

28

The information discussed above demonstrates the defendant has a strong incentive to flee from the United States.  Not only does the defendant face a lengthy prison sentence but he also faces deportation due to the nature of the charges.  He has assets in Colombia he can rely on, to include property and bank accounts.  The defendant is very likely to flee to his home country of Colombia, or one of the other countries he regularly travels to, to avoid facing prosecution.

**C. Conclusion**

The defendant has been an integral part of an international conspiracy involving a transnational organized crime enterprise that targeted vulnerable individuals seeking lawful employment in order to extract monies to benefit the defendant and his co-conspirators.  As outlined above, there are no conditions or combination of conditions that could reasonably assure the appearance of the defendant at future court proceedings or safety of the community.

Dated: December 3, 2025          Respectfully submitted,

                                 David Jaffe,
                                 Chief, Violent Crime and Racketeering
                                 Section


                                 _____/s/ *Grace Bowen*_____
                                 Grace Bowen
                                 Trial Attorney
                                 Department of Justice,
                                 Violent Crime and Racketeering Section